United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| THE BOARD OF TRUSTEES OF THE LELAND STANFORD JUNIOR UNIVERSITY,<br><br>Plaintiff,<br><br>v.<br><br>TRUMP CARD, INC., et al.,<br><br>Defendants. | Case No. 18-cv-01497-RS<br><br>**ORDER (1) DETERMINING GOOD FAITH PARTIAL SETTLEMENT AS BETWEEN PLAINTIFF THE BOARD OF TRUSTEES OF THE LELAND STANFORD JUNIOR UNIVERSITY AND SETTLING DEFENDANTS, (2) BARRING CLAIMS FOR INDEMNITY OR CONTRIBUTION AGAINST THE SETTLING DEFENDANTS, AND (3) REMANDING MATTER TO STATE COURT AS TO THE REAMINING CLAIMS BETWEEN STANFORD AND NON-SETTLING DEFENDANTS** |

## I. INTRODUCTION

The Board of Trustees of the Leland Stanford Junior University ("Stanford") moves for (1) a determination of good faith partial settlement as between Stanford and the Settling Defendants; (2) for an order barring claims for indemnity or contribution against the settling defendants; and (3) for an order remanding the case to state court as to the remaining claims between Stanford and the Non-settling Defendants. The Settling Defendants include Trump Card, LLC (sued as Trump Card, Inc.), Trump Card Holdings, LLC (sued as Trump Card Holdings, Inc.), Trump Card California, LLC (sued as Trump Card California, Inc.), Magnate Holdings, LLC, Magnate

1   Worldwide, LLC, Tiflor Transportation, LLC doing business as Trump Card San Diego, Ghuman
2   Transport Corporation, Birkiran Singh, Hardev Singh, Landstar Express America, Inc., and Pride
3   Logistics, LLC.[1]  All Settling Defendants join in Stanford's motion.  (Dkts. 71, 72, 73.)
4       The Non-settling Defendants, Trans Xpress Line, Inc. and Jermaine Markees Turner,
5   oppose Stanford's motion and contend the partial settlement lacks good faith and could unjustly
6   burden the Non-settling Defendants with an excessive share of liability.  Alternatively, the Non-
7   settling Defendants request a continuance of consideration of Stanford's motion until after they
8   have had the opportunity to depose the engineers who calculated the allocation of damage among
9   the Defendants.  Pursuant to Civil Local Rule 7-1(b), the motion is suitable for disposition without
10  oral argument.  For the reasons explained below, Stanford's motion is granted.

## II. BACKGROUND[2]

This case has a unique fact pattern that reads as if it was pulled from a first-year torts exam.  The lawsuit arises from two separate tractor trailer accidents that occurred on the same day in January 2017 on Interstate 40 in New Mexico.  Stanford had paid the Settling Defendants to transport a large piece of valuable scientific equipment (referred to as the "Wiggler") across interstate lines to its facility in Palo Alto, California.  Ghuman Transport Corporation was the owner/operator of the tractor trailer transporting the Wiggler to Stanford, with Birkiran Singh and Hardev Singh driving the vehicle.

On the day in question, the highway was partly covered with black ice.  At approximately 5:20 PM, Birkiran Singh was driving westbound when, upon reaching the black ice, he lost control of the vehicle and crashed into the center meridian (the "First Accident").  The Wiggler was ejected from the trailer and onto the median, damaging the equipment.  Later that evening, while

---

[1] Stanford asserts there is an additional entity, Landstar Systems, Inc., however the docket does not reflect this and no such entity joined Stanford's motion.

[2] The factual background is based on the declaration of Stanford's counsel (presenting the factual representations made in the motion as true and correct (Bower Decl. ¶ 7.)) and Non-settling Defendants counsel's declaration.

the first accident was still being addressed, Non-settling Defendant Turner (the driver for Non-settling Defendant Trans Xpress Line) was driving eastbound on Interstate 40 and lost control upon reaching the same black ice and jackknifed into the center meridian (the "Second Accident"). The trailer of Turner's vehicle landed on the Wiggler located on the meridian, resulting in near total destruction of the equipment. The Non-settling Defendants were not transporting cargo for Stanford. As discussed below, Stanford is informed the Wiggler suffered 20% of its damage in the First Accident and the remaining 80% in the Second Accident.

Stanford initially filed this lawsuit in San Mateo Superior Court in December 2017, alleging breach of contract and negligence. Some of the Settling Defendants subsequently removed the case in March 2018 on federal question grounds, contending the Carmack Amendment, 49 U.S.C. § 14706 *et seq.*, preempted the state court action. The Carmack Amendment governs "motor carriers" and "freight forwarders." § 14706(a). The law absolutely preempts all state common law claims against such carriers and freight forwarders and limits their liability to the stated actual loss value or damage to the goods. *Hughes Aircraft Co. v. N. Am. Van Lines, Inc.*, 970 F.2d 609, 611, 613 (9th Cir. 1992). The Settling Defendants contended they were protected by damages caps imposed by the Carmack Amendment, limiting their exposure to as low as $3,000 to $5,000. Moreover, the Carmack Amendment does not apply to brokers.[3] According to Stanford, the majority of Settling Defendants claimed broker status in litigation, whereby they would have no legal liability for the damage to goods transported in interstate commerce. It is unclear what legal authority provides the basis for such an argument. Although the Carmack Amendment preempts all state common law claims against carriers and freight forwarders, because the statute does not apply to brokers, most courts have held that brokers may be held liable under state tort or contract law in connection with shipments. *See Chubb Grp. of*

---

[3] A "broker" is defined as "a person, other than a motor carrier . . . that as a principal or agent sells, offers for sale, negotiates for, or holds itself out by solicitation, advertisement, or otherwise as selling, providing, or arranging for, transportation by motor carrier for compensation." 49 U.S.C. § 13102(2).

*Ins. Cos. v. H.A. Transp. Sys., Inc.*, 243 F. Supp. 2d 1064, 1069 (C.D. Cal. 2002). In any case, Stanford and the Settling Defendants risked extensive litigation over the application of the Carmack Amendment and its accompanying damages limitations if they were going to continue this lawsuit.

The parties engaged in a full day of court-supervised mediation by its Alternative Dispute Resolution department in November 2018. The mediation failed to produce a global settlement, but subsequent discussions between the Settling Defendants and Stanford yielded a proposed settlement in January 2019. (*See* Dkt. 69.) According to the settlement's terms, the Settling Defendants will pay $120,000 to Stanford. (Dkt. 69.) This constitutes approximately 28% of Stanford's currently claimed damages of $428,089.54, excluding interest. (Bower Decl. ¶ 7.) The settling defendants that were the owner/operator of the tractor trailer involved in the First Accident will fund the bulk of the money to be paid to Stanford by the Settling Defendants. Those settling defendants, Ghuman Transport Corporation, Birkiran Singh, and Hardev Singh, are funding $100,000 through their principals. (Dkt. 69.) The remaining $20,000 is being funded by the other Settling Defendants. (*Id.*) Stanford then brought this motion for an order determining the "good faith" nature of the settlement, an order barring claims for indemnity or contribution against the Settling Defendants, and for an order remanding the case to San Mateo Superior Court. All Settling Defendants joined the motion.

The deadline for any opposition was January 29, 2019. When no opposition was filed, Stanford filed a Notice of No Opposition Received from Non-settling Defendants. (Dkt. 74.) Subsequently, Non-settling Defendants filed their opposition on February 7, 2019, nine days after their brief was due. Stanford objected to the Non-settling Defendants' late-filed opposition and evidence and requested that the documents be stricken. (Dkt. 76.) Given the strong preference to decide cases on the merits, the Court considered the Non-settling Defendants' opposition, but permitted Stanford to file a reply in response to their brief and vacated the scheduled hearing. (Dkt. 77.)

## III. LEGAL STANDARD

Under California Code of Civil Procedure § 877.6, a court is permitted to approve a settlement as one entered in "good faith" if it determines that the settlement was made in that spirit. Federal courts hearing state law claims based on supplemental jurisdiction have the power to apply "good faith" settlement provisions under California Code of Civil Procedure §§ 877, 877.6. *Mason & Dixon Intermodal, Inc. v. Lapmaster Int'l LLC*, 632 F.3d 1056, 1060 (9th Cir. 2011).[4] Courts generally determine "good faith" by applying the following factors: (1) a rough approximation of plaintiffs' total recovery and settlor's proportionate liability; (2) the amount paid in settlement; (3) the allocation of settlement proceeds among plaintiffs; (4) a recognition that a settlor should pay less in settlement than he would if he were found liable after trial; (5) the financial conditions and insurance policy limits of settling defendants; and (6) the existence of collusion, fraud, or tortious conduct aimed to injure the interests of non-settling defendants. *Tech-Bilt, Inc. v. Woodward-Clyde & Assocs.*, 38 Cal. 3d 488, 499 (1985). Moreover, a settlement is made in "good faith" if it is within a "reasonable range" of a settling party's proportionate share of liability to the plaintiff. *Id.* A court may review affidavits and other evidence in its discretion in determining the issue of "good faith." Cal. Civ. Proc. Code § 877.6(b).

A determination by the court that the settlement was made in good faith "shall bar any other joint tortfeasor or co-obligor from any further claims against the settling tortfeasor or co-obligor for equitable comparative contribution, or partial or comparative indemnity, based on comparative negligence or comparative fault." Cal. Civ. Proc. Code § 877.6(c). The release of the settling tortfeasors does not discharge any other parties from liability (unless the settlement's terms so provide), "but [the release] shall reduce the claims against the others in the amount stipulated by the release . . . or in the amount of the consideration paid for it, whichever is the greater." Cal. Civ. Proc. Code § 877(a). Any party asserting lack of good faith bears the burden

---

[4] The Ninth Circuit has additionally held that the Carmack Amendment does not preempt state settlement law. *Mason & Dixon*, 632 F.3d at 1063.

of proof on that issue. Cal. Civ. Proc. Code § 877.6(d). Specifically, a party that seeks to dispute the good faith of a proposed settlement under the *Tech-Bilt* factors must demonstrate the settlement "is so far 'out of the ballpark' in relation to these factors as to be inconsistent with the equitable objectives of the statute." *Tech-Bilt*, 38 Cal. 3d at 499-500.

## IV. DISCUSSION

### A. Good Faith

The Non-settling Defendants concentrate their opposition on a single factor of the *Tech-Bilt* analysis: the rough approximation of Stanford's total recovery and Settling Defendants' proportionate liability. Stanford invokes a forensic report by engineer Mike Merritt of Argonne Laboratories attributing 20% of the Wiggler's damages to the First Accident, and the remaining 80% of its damage in the Second Accident. (Bower Decl. Ex. 4.) As noted above, the Settling Defendants were only involved with the First Accident. Non-settling Defendants protest they have not had the chance to depose Merritt or others from Argonne Laboratories to test the veracity of their method of allocating Stanford's damages to the Defendants.[5] Furthermore, Non-settling Defendants insisted the depositions had to be done in-person and videotaped, so that in case the witnesses did not appear at trial, the "live" testimony could still be presented. (Brown Decl. ¶ 14.)

Non-settling Defendants' protests are meritless. First, this *Tech-Bilt* factor calls for a rough estimate, not an exact one. As the California Supreme Court explained in *Tech-Bilt*, "[t]his is not to say that bad faith is established by a showing that a settling defendant paid less than his theoretical proportionate or fair share. Such a rule would unduly discourage settlements. . . . Moreover, such a rule would tend to convert the pretrial settlement approval procedure into a full-scale minitrial." *Tech-Bilt*, 38 Cal. 3d at 499 (internal quotation marks and citations omitted). "As *Tech-Bilt* emphasizes, of course, a 'good faith' settlement does not call for perfect or even nearly perfect apportionment of liability. . . . What is required is simply that the settlement not be

---

[5] These include David Lichty, an engineer for Argonne, and the Person Most Qualified ("PMQ") from Argonne.

grossly disproportionate to the settlor's fair share." *Abbott Ford, Inc. v. Superior Court*, 43 Cal. 3d 858, 874-75 (1987). Non-settling Defendants make no argument with regard to whether the settlement is grossly disproportionate to the settlor's fair share, only that they deserve a chance to depose the engineers who estimated the allocation of damages. This would be akin to having a minitrial to determine the "good faith" nature of the settlement, which is exactly what the California Supreme Court wished to avoid. In any event, the rough approximation of Settling Defendants' liability and the amount of the settlement appear to be in Non-settling Defendants' favor, as the Carmack Amendment could have potentially provided for substantially lower damages liability for some or all of the Settling Defendants.

Even assuming Non-settling Defendants should have had the opportunity to depose the Argonne engineers, they have not explained why only live videotaped depositions were the only acceptable medium for such testimony for the purposes of this motion. Indeed, Non-settling Defendants concede Stanford's counsel suggested meet and conferring to discuss the possibility of declarations signed under penalty of perjury in lieu of an oral deposition and the possibility of having the depositions be taken on written questions shortly after this motion was filed. (Brown Decl. ¶ 12.) Moreover, there was nothing to stop Non-settling Defendants from proffering their own expert testimony regarding estimates of allocation of damages to counter the Argonne engineers' estimates. Deficiencies in Non-settling Defendants' defense of their case do not constitute lack of good faith in the partial settlement. Accordingly, Non-settling Defendants have failed to carry their burden.[6]

---

[6] As noted above, Non-settling Defendants filed their opposition 9 days after their brief was due, forcing the rescheduling of Stanford's reply and the delay of consideration of this motion. This is not the first time in this litigation that Non-settling Defendants' counsel have failed to promptly adhere to court-ordered deadlines. In the prior order granting cross-defendant Gila Mountain Towing and Recovery, Inc.'s motion to dismiss Non-settling Defendants' amended cross-complaint for lack of personal jurisdiction, Non-settling Defendants not only failed to file any response to the motion, in violation of Local Rule 7-3(b), but also failed to appear at the scheduled hearing. (Dkt. 77.) Were this case not otherwise being remanded to state court, it may have been necessary to consider further orders consistent with Rule 11 of the Federal Rules of Civil Procedure.

The remaining *Tech-Bilt* factors either favor granting Stanford's motion or are neutral. The amount paid in settlement is approximately 28% of Stanford's claimed damages, excluding interest, which is higher than the estimated 20% of damages allocated to Settling Defendants by the Merritt report. There is only one plaintiff, Stanford, to which the settlement will be paid. As to the recognition that a settlor should pay less in settlement than he would if he were found liable after trial, it appears many, if not all, of the Settling Defendants are paying more than if litigation proceeded to trail, as some could potentially benefit from the Carmack Amendment's preemption of state law claims. With regards to the fifth *Tech-Bilt* factor, Stanford is informed and believes the first $100,000 of the settlement represents the Ghuman policy limits for damage to cargo afforded by Ghuman, Birkiran Singh, and Hardev Singh's insurer. No representation is made regarding the financial conditions of the Settling Defendants. Finally, there is no evidence of collusion, fraud, or tortious conduct aimed to injure the interests of the Non-settling Defendants. The proposed settlement was reached after a full day of court-supervised mediation by its Alternative Dispute Resolution department and arms-length ongoing negotiations between Stanford and Settling Defendants' counsel. (Dkt. 67; Bower Decl. ¶ 7.) The settlement appears to be "within ballpark" and is in "good faith."

**B. Remand**

This case was originally removed in light of the federal question involving the Carmack Amendment and its applicability to the Settling Defendants' liability. Since the Non-settling Defendants were not involved in interstate transport of cargo belonging to Stanford, they have no basis to assert the Carmack Amendment as a defense to full liability exposure in this case. The dismissal of the Settling Defendants from this case would thereby eliminate federal question jurisdiction. Additionally, there is no diversity jurisdiction, as non-settling defendant Trans Xpress Line, Inc. is incorporated in California, sharing Stanford's citizenship. (Bower Decl. ¶ 8); *see* 28 U.S.C. § 1332(a). It is wholly within the district court's discretion whether to retain supplemental jurisdiction over state law claims after all claims over which it has original jurisdiction have been dismissed. 28 U.S.C. § 1367(c); *Carlsbad Tech., Inc. v. HIF Bio, Inc.*, 556

ORDER GRANTING MOTION FOR DETERMINATION OF GOOD FAITH SETTLEMENT
CASE NO. 18-cv-01497-RS
8

U.S. 635, 639 (2009). Supplemental jurisdiction should not be retained because this case is still in its early stages and judicial economy would not be served by keeping the case in federal court. Therefore, remand is appropriate.

## V. CONCLUSION

For the foregoing reasons, Stanford's motion is granted and the case is remanded to the San Mateo Superior Court. In light of this order, the parties' stipulation regarding extending case management deadlines and setting the depositions of Argonne engineers is terminated as moot. (Dkt. 79.)

**IT IS SO ORDERED**.

Dated: April 1, 2019

_____
RICHARD SEEBORG
United States District Judge